# Exhibit A

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
12/31/2025
CT Log Number 550992112

## Service of Process Transmittal Summary

**TO:**   Registered Agent Department
         Business Filings Incorporated (Recipient Account Only)
         525 JUNCTION RD STE 5000
         MADISON, WI 53717-2154

**RE:**   **Process Served in District of Columbia**

**FOR:**  The Cogar Group, Ltd.  (Domestic State: VA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: ARCHIBALD T. DJABATEY // To: The Cogar Group, Ltd. |
| **CASE #:** | 2025CAB8437 |
| **NATURE OF ACTION:** | Employee Litigation - Discrimination |
| **PROCESS SERVED ON:** | Business Filings Incorporated, Washington, DC |
| **DATE/METHOD OF SERVICE:** | By Process Server on 12/31/2025 at 10:45 |
| **JURISDICTION SERVED:** | District of Columbia |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Registered Agent Department  ctsop@bizfilings.com |
| **REGISTERED AGENT CONTACT:** | Business Filings Incorporated |
| | 1015 15th Street, NW |
| | Suite 1000 |
| | Washington, DC 20005 |
| | 844-832-8351 |
| | CTService@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                  Wed, Dec 31, 2025
**Server Name:**                           Drop Service

| Entity Served | THE COGAR GROUP, LTD |
|---|---|
| Case Number | 2025CAB008437 |
| Jurisdiction | DC |

| Inserts | | |
|---|---|---|
|  |  |  |



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Archibald Djabatey
_____ Plaintiff

vs.

The Coqar Group, LTD
_____ Defendant

Case Number 2 0 2 5 -CAB- 8 4 3 7

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Archibald Djabatey
_____
Name of Plaintiff's Attorney

4504 Hunt pl NE #2
_____
Address

Wash, DC 20019
_____

240 877-5739
_____
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date 12/24/2025

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                    Super. Ct. Civ. R. 4




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_Archibald Djabatey_
                                           Demandante

contra

_The Logan Group, LTD_                     Número de Caso: _____
                                           Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_Archibald Djabatey_                       *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante
_4504 Hun F PK NE #2_                      Por: _____
Dirección                                               Subsecretario
_Wash DC 20019_
_240 877-5739_                             Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
[Amharic text] (202)879-4828 [Korean text]    ?ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                    Super. Ct. Civ. R. 4



**Superior Court of the District of Columbia**
**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**202-879-1133 | www.dccourts.gov**

**Case Number:** 2025-CAB-008437

**Case Style:** Archibald T Djabatey v. The Cogar Group, LTD  et al.

### INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 04/03/2026 | 9:30 AM | Remote Courtroom 318 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Katherine E Oler. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated above, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Milton C. Lee, Jr.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.


**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"


**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch Clerk's Office at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

## ACCESSIBILITY AND LANGUAGE ACCESS

### Persons with Disabilities:

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

### Interpreting and Translation Services:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

### Servicios de interpretación y traducción:

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

### የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘረውን የጸሐፊ ቢሮ (ክላርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

📞 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

   Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at www.dccourts.gov/services/represent-yourself by clicking on the link that says, "List of Legal Service Providers for Those Seeking an Attorney or Legal Advice".

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.

# District of Columbia Courts

# Tips for Using DC Courts Remote Hearing Sites



The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings. The Courts are committed to enhancing access to justice for all.

There are four remote access sites throughout the community which will operate **Monday – Friday, 8:30 am – 4:00 pm.**

| | |
|---|---|
| **Remote Site – 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Remote Site – 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 |
| **Remote Site – 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Remote Site – 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |



**If you want to use a remote site location for your hearing,** call 202-879-1900 or email DCCourtsRemoteSites@dcsc.gov at least 24 hours before your hearing to reserve a remote access computer station.

**If you require special accommodations such as an interpreter for your hearing,** please call 202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your case number and any hyperlinks provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.

\*Safety and security measures are in place at the remote sites.

**Contact information to schedule your remote access computer station:**
Call:  202-879-1900
Email:  DCCourtsRemoteSites@dcsc.gov




# Tribunales del Distrito de Columbia
## Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay cuatro sitios de acceso remoto que funcionarán **de Lunes a Viernes, de 8:30 am a 4:00 pm**.

| | |
|---|---|
| **Sito Remoto – 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Sito Remoto – 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 |
| **Sito Remoto – 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Sito Remoto – 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |



**Si desea usar un sitio remoto para su audiencia**, llame al 202-879-1900 o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto.

**Si necesita adaptaciones especiales**, como un intérprete para la audiencia, llame al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***
1. Su número de caso y todos los hipervínculos que le hayan proporcionado los Tribunales para la audiencia programada.
2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.
3. Materiales para tomar nota, como papel y lápiz.

\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: 202-879-1900
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

**FILED**
CIVIL DIVISION

**DEC 24 2025**

Superior Court of the
District of Columbia

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

ARCHIBALD T. DJABATEY

4504 Hunt Pl NE, #2

Washington, DC 20019

Telephone: (240) 877-5739

Plaintiff, Pro Se,

v.                        Civil Action No. **2 0 2 5** -CAB- **8 4 3 7**

THE COGAR GROUP, LTD.;

JOE CHASE;

CAPTAIN WALLACE;

DPM MARTIN; and

FRANK POLIEVKA, JR.,

1015 15th Street NW # 1000 Wash OC. 20005
Defendants.

**COMPLAINT**

I.    PARTIES

1.  Plaintiff Archibald T. Djabatey ("Plaintiff") is an adult resident of the District of Columbia. Plaintiff is an experienced federal security officer who entered into an employment relationship with Defendant, The COGAR Group, Ltd., and performed services pursuant to that contractual relationship.

2.  Defendant, The COGAR Group, Ltd. ("COGAR" or "Defendant") is a private security company engaged in interstate commerce and doing business in the District of Columbia. Upon information and belief, Defendant maintains offices at:

    11166 Fairfax Blvd #306, Fairfax, VA 22030

3.  Defendant employed Plaintiff, controlled the terms and conditions of his employment, and acted through its managers, supervisors, and agents at all relevant times.

4.  Defendant Joe Chase is, upon information and belief, a supervisory employee of Defendant The COGAR Group, Ltd., who exercised authority over Plaintiff's employment and participated in the actions complained of herein.

5.  Defendant Captain Wallace is, upon information and belief, a supervisory official employed by Defendant The COGAR Group, Ltd., who exercised direct supervisory authority over Plaintiff and participated in the conduct described in this Complaint.

6.  Defendant DPM Martin is, upon information and belief, a managerial employee of Defendant The COGAR Group, Ltd., who exercised authority over Plaintiff's work assignments, scheduling, and conditions of employment, and participated in the actions complained of herein.

7.  Defendant Frank Polievka, Jr. is, upon information and belief, a Vice President of Defendant The COGAR Group, Ltd., who exercised decision-making authority over Plaintiff's employment and participated in and ratified the conduct described in this Complaint.

## JURISDICTION AND VENUE

8.  This Court has subject-matter jurisdiction over this action pursuant to D.C. Code § 11-921(a) because the claims arise under the laws of the District of Columbia and involve civil causes of action for which this Court has original jurisdiction.

9.  This Court has personal jurisdiction over Defendant The COGAR Group, Ltd. Because Defendant conducts business in the District of Columbia, employed Plaintiff in the District of Columbia, and committed the unlawful acts complained of within the District of Columbia.

10. Venue is proper in this Court pursuant to D.C. Code § 13-423 and § 13-425 because:

11. The employment relationship was formed and performed in the District of Columbia;

12. The adverse employment actions occurred in the District of Columbia; and

13. Plaintiff suffered injury in the District of Columbia.

14. Plaintiff's claims include, but are not limited to, causes of action arising under the
District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1401 et seq., and 42
U.S.C. § 1981, over which this Court has concurrent jurisdiction.

## STATEMENT OF FACTS

15. Plaintiff Archibald Djabatey is an experienced federal security officer with more
than sixteen (16) years of service protecting federal facilities and employees.

16. At all relevant times, Defendant acted through specific supervisory and managerial
personnel, including Joe Chase (supervisory authority), Captain Wallace (site
supervisor), Deputy Project Manager Martin (managerial employee who also
interfered with and enforced appearance-related directives), and Frank Polievka, Jr.
(Vice President) (collectively, the "Individual Defendants").

17. Each of these individuals exercised authority or influence over Plaintiff's
employment conditions and personally participated in, directed, approved, or
ratified the conduct described herein within the scope of their employment and/or
with actual or apparent authority on behalf of Defendant.

18. Defendant The COGAR Group, Ltd. ("COGAR") is a private security contractor
operating in the District of Columbia and employs armed protective officers at
federal worksites, including the Department of Commerce.

19. In early December 2025, Plaintiff was assigned by COGAR to work at a Department
of Commerce site in the District of Columbia.

20. Plaintiff was hired as a full-time employee with flexible availability across all shifts, as reflected in Defendants' written offer of employment.

21. From the outset of his assignment, Plaintiff was subjected to unusual scrutiny, inconsistent enforcement of workplace rules, and conduct that departed from standard federal security practices, including actions by supervisory personnel and individuals lacking supervisory authority.

22. On or about December 4, 2025, Plaintiff engaged in protected activity by sending a written complaint to COGAR management raising concerns about:

- unequal treatment;
- inconsistent enforcement of workplace rules;
- improper involvement of non-supervisory personnel in disciplinary matters; and
- conduct that undermined professional boundaries and officer dignity.

23. At the time Plaintiff engaged in protected activity, he had already been hired and was actively working as a full-time FLEX officer with AM, PM, and night availability, as reflected in Defendants' written offer of employment. Plaintiff worked continuously under this FLEX arrangement without issue, discipline, or performance concern. Only after Plaintiff submitted his protected complaint was he told to "pick a schedule," demonstrating that Defendants' sudden scheduling demand was pretextual and retaliatory, rather than based on any legitimate operational need.

24. In addition to the foregoing conduct—which occurred both before and after Plaintiff's protected complaint—a meeting involving supervisory personnel

occurred without any prior investigation, documentation, or finding of misconduct

and immediately followed Plaintiff's protected complaint, evidencing retaliatory

motive rather than legitimate enforcement.

25. At the conclusion of that meeting, Plaintiff was expressly instructed that the

meeting 'was to stay between us.' This directive was given immediately following

Plaintiff's protected complaint and contemporaneous with statements questioning

Plaintiff's continued presence at the site.

26. This instruction was inconsistent with Defendants' own written policies requiring

reporting, investigation, and escalation of complaints, and further evidences

retaliatory motive and concealment of protected activity.

27. Plaintiff's complaint was measured, professional, and requested nothing more than

a respectful and lawful working environment.

28. Later that same day, Plaintiff was called into a meeting with supervisory personnel

concerning his complaint.

29. During that meeting, management confronted Plaintiff about his protected activity

and stated to him, "You're not going to be here long."

30. During this meeting, Joe Chase and Captain Wallace, each acting in a supervisory

capacity on behalf of Defendant, confronted Plaintiff regarding his protected activity

and questioned his continued presence at the site. During the meeting,  both

supervisors stated words to the effect **of,** "You're not going to be here long, " a

statement reasonably understood as a threat to Plaintiff's continued employment.

31. Defendants directed Plaintiff to read aloud, word for word, an email he had previously sent, while repeatedly interrupting him after each line to assert that he was incorrect.

32. During the same encounter, Defendants' stated words to the effect that "they did not trust" Plaintiff and further remarked that Plaintiff was "not going to be here long." Defendants' additionally made statements suggesting that they did not trust officers generally, implying Plaintiff posed a security or reliability concern without any factual basis.

33. During this same period and contemporaneous with the retaliatory meeting, Captain Wallace referenced Plaintiff's purported second job as if it were already known or assumed, despite Plaintiff never disclosing outside employment and no issue having been raised regarding performance, availability, or policy compliance. This statement was not framed as an inquiry but as an assertion, evidencing retaliatory surveillance, internal speculation, or pretextual targeting following Plaintiff's protected complaint.

34. These statements were made in a professional setting, without provocation, and contributed to Plaintiff being treated as untrustworthy and subject to adverse scrutiny.

35. That same day Plaintiff engaged in protected activity by reporting concerns regarding professionalism, selective enforcement, and boundary violations, Defendants convened an off-the-record meeting with Plaintiff outside normal procedures.

36. During this meeting, Plaintiff was told that he was "not going to be here long," that he "takes things too personally," and that his decision to raise concerns was problematic.

37. Plaintiff was further accused of dishonesty and was instructed to provide photographic proof of a flat tire—despite no policy requiring such proof and despite similar requests not being imposed on other officers.

38. Deputy Project Manager Martin, while acting under color of managerial authority at Plaintiff's assigned worksite, personally interfered with Plaintiff's ability to perform his assigned duties and participated in coercive and retaliatory conduct directed at Plaintiff.

39. Deputy Project Manager Martin repeatedly came to Plaintiff's post without legitimate operational necessity, interrupting Plaintiff's assigned duties on multiple occasions. Martin demanded that Plaintiff produce an invoice or photographic proof related to a flat tire, treating Plaintiff in a demeaning and infantilizing manner not imposed on other employees.

40. Martin imposed an arbitrary and coercive deadline requiring Plaintiff to select a work schedule within approximately twenty minutes, despite lacking authority to mandate such a decision. Martin continued to return to Plaintiff's post multiple times thereafter, escalating pressure and surveillance. Martin further participated in Plaintiff's final removal in the arms room alongside Captain Wallace and made comments regarding Plaintiff's boots, evidencing heightened scrutiny unrelated to legitimate job performance.

41. Martin also implemented and enforced false or incorrect appearance-related standards not supported by company policy. Martin's actions aided, abetted, and facilitated the discriminatory and retaliatory conduct of supervisory personnel, interfering with Plaintiff's contractual employment rights.

42. On or about December 19, 2025, Frank Polievka, Jr., Vice President of Operations, acting in a supervisory and final decision-making capacity, issued a written ultimatum to Plaintiff adopting, ratifying, and escalating the retaliatory actions previously imposed by subordinate supervisors. Despite Plaintiff having already answered the grooming inquiry, confirmed his compliance, and raised concerns regarding discriminatory enforcement, Polievka re-presented the same questions verbatim, demanded that Plaintiff "come into compliance," and conditioned Plaintiff's continued employment on whether Plaintiff would change his prior response and accede to retaliatory demands.

43. Polievka expressly tied a favorable outcome to Plaintiff's submission and a negative outcome to Plaintiff's refusal to recant or alter his protected position, thereby coercing Plaintiff to abandon protected activity. This ultimatum was issued without any investigation, policy citation, or finding of misconduct, and constituted corporate-level ratification, coercion, and escalation of unlawful retaliation.

44. Polievka's ultimatum was contemporaneous with instructions that the matter "remain between us," further evidencing intent to suppress reporting and conceal retaliatory conduct.

45. Defendants' conduct directly contradicted their own written policies. COGAR's Anti-Harassment Policy and Complaint Procedure expressly states that **"COGAR encourages reporting of all perceived incidents of discrimination or harassment"** and that **"it is the policy of COGAR to promptly and thoroughly investigate such reports."** The policy further provides that **"COGAR prohibits retaliation against any individual who reports discrimination or harassment or who participates in an investigation of such reports."**

46. Instead of complying with these mandatory policies, Defendants failed to conduct any investigation, escalated scrutiny of Plaintiff, questioned his credibility, and subjected him to disparate treatment the same day his protected complaint was made—further demonstrating unlawful retaliation and pretext.

47. Defendants' conduct directly violated their own written anti-harassment and anti-retaliation policies.

48. Defendants' handbook expressly provides that reported allegations of harassment, discrimination, or retaliation "will be investigated promptly," that confidentiality will be maintained, and that retaliation against an individual for reporting or participating in such matters is a serious violation subject to disciplinary action.

49. Plaintiff complied precisely with the prescribed complaint process by reporting his concerns in writing to supervisory personnel. Despite this mandatory policy language, Defendants failed to acknowledge Plaintiff's complaint, failed to initiate any investigation, and failed to take any corrective or protective action.

50. Instead, Defendants subjected Plaintiff to immediate scrutiny, credibility challenges, and adverse employment action the same day the complaint was made. This complete departure from Defendants' own required procedures constitutes compelling evidence of retaliation, pretext, and unlawful motive.

51. Defendants' conduct directly violated their own written Anti-Harassment and Anti-Retaliation Policy, which states that reported allegations of discrimination, harassment, or retaliation "will be investigated promptly," that confidentiality will be maintained to the extent possible, and that retaliation against an individual for reporting or participating in such matters is a serious violation subject to discipline.

52. Plaintiff submitted a written complaint in accordance with this policy. Despite the policy's mandatory language, Defendants provided no acknowledgment, no intake, no investigation, and no corrective action.

53. Instead, the same day Plaintiff reported his concerns, Defendants escalated scrutiny, questioned Plaintiff's credibility, and subjected him to adverse treatment. This complete absence of investigation—followed by immediate escalation—demonstrates retaliatory intent and pretext, not oversight.

54. Defendants' anti-retaliation policy is not aspirational or suggestive; it is mandatory.

55. By its plain terms, the policy requires that reports of discrimination or harassment be promptly acknowledged and thoroughly investigated, and it expressly prohibits retaliation against employees who make such reports or participate in related inquiries.

56. Deviation from written policy after protected activity is evidence of retaliation.

57. Defendants' failure to acknowledge, document, or investigate Plaintiff's
complaint—despite mandatory policy language requiring prompt action—followed
by immediate escalation and threats to Plaintiff's employment, evidences
retaliatory intent as a matter of law.

58. On or about December 4, 2025, Plaintiff submitted a written complaint to
supervisory personnel reporting perceived discriminatory and retaliatory conduct,
thereby triggering Defendants' non-discretionary obligations under their own policy.

59. Despite this obligation, Defendants provided no acknowledgment, no receipt, no
notice of investigation, and no follow-up of any kind—then or at any time thereafter.

60. Instead, on the very same day Plaintiff made his complaint, Defendants summoned
him into an unannounced and non-documented meeting in which he was told he
"was not going to be here long," signaling immediate adverse intent rather than
policy-mandated review.

61. This complete failure to follow mandatory investigative procedures, coupled with
the contemporaneous escalation and intimidation, constitutes a direct violation of
Defendants' own written policies.

62. Defendants' silence in the face of a protected complaint is not neutral—it is
affirmative evidence of retaliation, pretext, and knowing disregard of Plaintiff's
protected rights.

63. After Plaintiff engaged in protected activity, Defendants began scrutinizing his
schedule without policy basis, demanded written 'availability' not required of other
officers, and imposed new scheduling restrictions inconsistent with the schedule

Defendants themselves had assigned. When Plaintiff explained he was working the approved schedule, Defendants removed him from the post.

64. If the work schedule was allegedly improper, responsibility for any such deficiency rested with the scheduler who prepared the schedule, the supervisory personnel who approved it, and management officials who exercised control over staffing and scheduling decisions.

65. Plaintiff did not create the schedule, did not assign himself shifts, and did not select his own hours.

66. Plaintiff worked only the shifts that were posted and represented as open and authorized by management.

67. Nevertheless, following Plaintiff's protected complaint, Defendants singled out Plaintiff for discipline while taking no action against the scheduler or the supervisory personnel who approved the schedule.

68. This selective enforcement, occurring immediately after protected activity, demonstrates disparate treatment and retaliatory motive rather than legitimate enforcement of policy.

69. After Plaintiff explained multiple times that he did not choose his own schedule and was working only the hours provided by the designated scheduler, Defendants nevertheless continued to press Plaintiff on the issue.

70. Plaintiff expressly stated that he lacked authority to select shifts and was merely working what had been represented as open and approved. Despite this clarification, Defendants persisted, demonstrating that they were aware Plaintiff

was not responsible for scheduling decisions yet continued to advance the
narrative that Plaintiff had acted improperly.

71. During these exchanges, supervisory personnel acknowledged that scheduling
authority had long been delegated to the assigned scheduler and that Plaintiff's
understanding was correct.

72. Plaintiff was informed that the scheduler had been handling scheduling
responsibilities for an extended period—well before Plaintiff's arrival—without prior
objection from management. This acknowledgment further confirms that the
asserted scheduling rationale was not the true basis for Plaintiff's discipline.

73. For years prior to Plaintiff's employment, management had deliberately delegated
scheduling responsibilities to the scheduler and removed themselves from day-to-
day scheduling oversight.

74. Plaintiff relied on this established practice in good faith and followed the schedule
exactly as communicated. No policy prohibited Plaintiff from working the posted
schedule, and no prior discipline, warning, or corrective action was issued
regarding scheduling practices before Plaintiff engaged in protected activity.

75. After Plaintiff's protected activity and subsequent suspension from the schedule,
Defendants compelled changes to scheduling practices and imposed new
restrictions that had not previously existed.

76. These changes were implemented only after Plaintiff's situation arose, despite
years of prior delegation and acceptance of the scheduler's authority.

77. The retroactive imposition of new rules following protected activity constitutes post hoc justification and evidences retaliatory motive rather than legitimate policy enforcement.

78. Following Plaintiff's protected activity, Defendants escalated their retaliatory conduct by issuing an explicit ultimatum. On or about December 19, 2025 , Defendant, acting in a supervisory capacity, informed Plaintiff in writing that unless Plaintiff "came into compliance" with grooming demands and selected one of four newly imposed schedules, Plaintiff was required to "submit [his] resignation by close of business" or would be "removed from the contract."

79. This communication constituted a direct threat of termination and a coerced resignation, issued without investigation, progressive discipline, or adherence to union procedures, and further confirms Defendants' intent to punish Plaintiff for engaging in protected activity.

80. Following Plaintiff's protected activity, a supervisory representative of Defendants stated in writing: "After your situation I had to provide all open schedules available full time for any new person to pick first day of training," confirming that changes to scheduling practices were implemented specifically because of Plaintiff's complaint.

81. At the time Defendants removed Plaintiff from his post, Plaintiff was already working a full-time schedule assigned and approved by Defendants and had been performing those shifts without issue. Defendants' later representation that full-time schedules were thereafter offered to new hires only confirms that the

restrictions imposed on Plaintiff were not based on any pre-existing policy or operational necessity.

82. Plaintiff's work schedules for November and December further confirm the pretextual nature of Defendants' claims. Plaintiff was continuously scheduled and permitted to work without restriction, warning, or notation of noncompliance. No schedule was suspended, modified, or conditioned on corrective action until after Plaintiff engaged in protected activity. This uninterrupted scheduling is inconsistent with Defendants' later assertions and confirms that the alleged justification was fabricated after the fact.

83. At the time Defendants imposed new scheduling demands on Plaintiff, Defendants had not finalized post bids, and a substantial portion of the guard force did not have fixed schedules, as acknowledged by both union representatives and management. Defendants nonetheless singled out Plaintiff for immediate scheduling restrictions not imposed on others.

84. During the same meeting following Plaintiff's protected activity, Defendants' questioned Plaintiff about an alleged "second job" and demanded that Plaintiff provide a written statement of his "availability," despite the fact that Plaintiff had already provided his availability at the time of hire and had been working an approved schedule without issue.

85. Plaintiff had never represented to Defendants' that he held a second job, and no policy required officers to disclose outside employment or re-submit availability

under these circumstances. Plaintiff is informed and believes that similarly situated officers were not subjected to such inquiries or demands.

86. Plaintiff had not been disciplined, counseled, or accused of any performance or scheduling deficiencies prior to submitting his complaint.

87. On or about December 10, 2025, less than one week after Plaintiff engaged in protected activity, COGAR removed Plaintiff from the work schedule, required him to turn in his badge, and sent him home.

88. Plaintiff was removed from his post without any prior investigation, written findings, or disciplinary determination.

89. After Plaintiff's removal, COGAR management acknowledged in writing that Plaintiff had already been suspended from the schedule and stated that management would "be looking into the matter" and that a determination would be issued after a review was completed.

90. After Plaintiff was suspended from the work schedule, Defendants stated that a "review" would be conducted by the same supervisory chain involved in the events Plaintiff complained of. Defendants did not assign the matter to a neutral decision-maker, did not separate the investigation from the implicated personnel, and did not take control of the review through Human Resources.

91. Requiring Plaintiff's complaint to be evaluated by the same individuals whose conduct was challenged reflects structural bias, a lack of neutral review, and deliberate indifference to retaliation safeguards.

92. Following the adverse employment action—specifically, Plaintiff's suspension from the work schedule—Defendants advanced post hoc justifications for conduct that had already occurred. Prior to the suspension, no Defendant identified any alleged noncompliance, violation, scheduling deficiency, or policy breach by Plaintiff.

93. When management later acknowledged awareness of Plaintiff's situation and stated that the matter was under "review," no compliance issue or disciplinary basis was cited. Instead, Defendants referenced only the suspension itself, confirming that the adverse action preceded any investigation or justification. This sequence demonstrates that the purported "review" served to retroactively rationalize a decision already made.

94. The purported "review" referenced by management occurred, if at all, only after the adverse action had already been taken and was to be conducted by the same chain of command responsible for Plaintiff's removal.

95. Because Plaintiff was removed from his post before any review occurred, the alleged review could not have been the basis for the adverse action and instead functioned as a post hoc justification.

96. The timing and sequence of events demonstrate a clear causal connection between Plaintiff's protected activity and his removal from employment.

97. Plaintiff suffered loss of income, emotional distress, reputational harm, and other damages as a direct and proximate result of Defendant's actions.

98. Defendant's conduct was willful, retaliatory, and inconsistent with lawful employment practices, and deprived Plaintiff of the equal enjoyment of contractual rights on the same terms as others.

## COUNT I – RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

## (Against The COGAR Group, Ltd. And Individual Defendants in Their Individual Capacities)

99. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

100.    Section 1981 guarantees all persons the same right "to make and enforce contracts" as is enjoyed by white citizens, including the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, free from racial discrimination and retaliation.

101.    The Supreme Court has expressly held that retaliation for opposing racial discrimination is actionable under 42 U.S.C. § 1981. CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008).

102.    Plaintiff is a Black man and was engaged in a contractual employment relationship with Defendant The COGAR Group, Ltd., protected by § 1981.

103.    Plaintiff's protected activity opposed conduct that a reasonable employer would understand as racially discriminatory and interfering with equal contractual rights protected by 42 U.S.C. § 1981, and Defendants retaliated against Plaintiff for engaging in that protected opposition.

104.    During a meeting convened by Defendants following Plaintiff's protected

activity, Plaintiff expressly raised concerns of racial discrimination. Plaintiff stated

that three Black men were present in the meeting, including Plaintiff and two

supervisory representatives of Defendants.

105.    Plaintiff stated that his supervisors, who were substantially older, had likely

experienced racial discrimination by white individuals earlier in their careers.

Plaintiff further stated that, notwithstanding that history, he reasonably believed he

was being subjected to unequal and discriminatory treatment by supervisors who

had themselves experienced racial discrimination.

106.    Plaintiff questioned the basis for the meeting, explaining that he did not

understand why he had been summoned other than Defendants' objection to an

email he had sent asserting his rights.

107.    Defendants reacted negatively to Plaintiff's statements, and adverse actions

against Plaintiff intensified thereafter.

108.    Racial discrimination and retaliation are actionable under federal law

regardless of whether the discriminator and the victim share the same race. See

CBOCS West, Inc. v. Humphries, 553 U.S. 442, 445–46 (2008); Castaneda v.

Partida, 430 U.S. 482, 493–94 (1977).

109.    Plaintiff engaged in protected activity when he opposed unequal and

discriminatory treatment, complained to management about inconsistent

enforcement and hostile conduct, and asserted his right to equal treatment in the

workplace.

110.    *The Supreme Court has repeatedly recognized that retaliation for opposing unlawful discrimination constitutes discrimination itself.* See *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008); *Gomez-Perez v. Potter*, 553 U.S. 474 (2008).

111.    Defendants were aware of Plaintiff's protected activity. Plaintiff's complaint was directly confronted by management, printed out, read aloud, dismissed, and immediately followed by statements signaling adverse consequences, including that Plaintiff was "not going to be here long."

112.    Shortly after Plaintiff engaged in protected activity, Defendants subjected him to materially adverse actions, including removal from his post, suspension from the schedule, and termination of work opportunities—actions that would deter a reasonable employee from opposing discrimination.

113.    The temporal proximity, the absence of any prior discipline, the lack of documentation, and Defendants' shifting and illogical explanations establish a causal connection between Plaintiff's protected activity and the adverse actions. Under *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), such inconsistencies permit a factfinder to infer retaliatory intent.

114.    Discriminatory intent is not negated merely because the decision-makers share the same race as Plaintiff. The Supreme Court has expressly recognized that *"persons in positions of power can... discriminate against other members of the same ethnic or racial group."* *Castaneda v. Partida*, 430 U.S. 482, 499 (1977).

115.    Defendants' conduct constituted intentional retaliation, taken because Plaintiff opposed unequal treatment and asserted rights protected by § 1981.

116.     As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff

suffered economic loss, loss of employment opportunities, emotional distress,

humiliation, and other compensable damages.

117.     Defendants acted willfully, knowingly, and with reckless disregard for

Plaintiff's federally protected rights, entitling Plaintiff to compensatory damages,

punitive damages, and all other relief available under law.

118.     WHEREFORE, Plaintiff demands judgment against Defendants for

compensatory damages, punitive damages, costs, interest, and such other relief as

the Court deems just and proper.

## COUNT II

## RETALIATION IN VIOLATION OF D.C. CODE § 32-1311

### (Against The COGAR Group, Ltd. And Individual Defendants)

119.     Plaintiff incorporates by reference all preceding paragraphs as though fully

set forth herein.

120.     D.C. Code § 32-1311 prohibits any employer or "other person" from

discharging, threatening, penalizing, discriminating, or retaliating against an

individual because that individual has opposed unlawful conduct, reported

violations of District law, or exercised rights protected by statute.

121.     Plaintiff engaged in protected activity under § 32-1311 when he:

122.     Raised concerns about unequal treatment and improper conduct in the

workplace;

123.    Reported inconsistent and selective enforcement of rules;

124.    Objected to treatment that reasonably appeared discriminatory and
retaliatory; and

125.    Sought intervention and compliance through internal complaint channels.

126.    Defendants had actual knowledge of Plaintiff's protected activity. Plaintiff's
complaints were made directly to management and supervisors responsible for
workplace decisions, including scheduling, discipline, and continued employment.

127.    Immediately following Plaintiff's protected activity, Defendants subjected
Plaintiff to adverse actions, including but not limited to:

128.    Hostile and retaliatory confrontation by management;

129.    Explicit statements suggesting Plaintiff's continued employment was in
jeopardy;

130.    Sudden and unexplained restrictions and accusations not imposed on
similarly situated employees;

131.    Removal from his assigned post and suspension from the work schedule;

132.    Deprivation of work hours and income.

133.    These actions constitute materially adverse employment actions within the
meaning of D.C. Code § 32-1311 because they would dissuade a reasonable
employee from engaging in protected activity.

134.    The temporal proximity between Plaintiff's protected activity and
Defendants' adverse actions is immediate and striking, giving rise to a strong
inference of retaliatory motive.

135.     Defendants' proffered explanations for their actions were inconsistent,

illogical, and shifted over time. Such contradictions permit a fact-finder to infer

retaliation under settled law. See Reeves v. Sanderson Plumbing Prods., Inc., 530

U.S. 133 (2000).

136.     Defendants took adverse action before conducting any investigation or

review, and only later claimed that a "review" would occur. Discipline imposed prior

to review constitutes post-hoc justification and is evidence of retaliation rather than

legitimate business action.

137.     Defendants' conduct was intentional, willful, and undertaken with reckless

disregard for Plaintiff's statutory rights under D.C. Code § 32-1311.

138.     As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff

suffered loss of income, emotional distress, humiliation, and interference with his

employment relationship.

139.     Defendants' actions violate the plain language and purpose of D.C. Code §

32-1311, which exists to ensure that workers may report unlawful or improper

conduct without fear of reprisal.

## **RELIEF REQUESTED FOR COUNT II**

140.     Plaintiff seeks all relief available under D.C. Code § 32-1311, including:

141.     Compensatory damages,

142.     Statutory damages where applicable,

143.     Injunctive relief,

144.    Costs and fees,

145.    And such other relief as the Court deems just and proper.

## COUNT III

## Violation of the D.C. Human Rights Act

## D.C. Code § 2-1402.01 et seq.

## (Against The COGAR Group, Ltd. And Individual Defendants)

146.    Plaintiff incorporates by reference all preceding paragraphs as though fully
set forth herein.

147.    The District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2–
1402.01, guarantees every individual the equal opportunity to participate fully in the
economic life of the District, including employment and public service, free from
discrimination, retaliation, or exclusion.

148.    Plaintiff is a member of protected classes under the DCHRA and engaged in
activity protected by the Act, including opposing unequal treatment and asserting
rights guaranteed by District law.

149.    Defendants interfered with Plaintiff's rights under the DCHRA by subjecting
him to retaliatory treatment, exclusion from employment opportunities, and
adverse actions that denied him equal participation in the economic life of the
District.

150.    Defendants' conduct was intentional, willful, and had the effect of punishing

Plaintiff for asserting protected rights and deterring future participation in protected

activity.

151.    Defendants' actions deprived Plaintiff of the full and equal enjoyment of

employment opportunities and public service protections guaranteed by D.C. Code

§ 2–1402.01.

152.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

suffered economic harm, emotional distress, humiliation, and loss of statutory

protections.

153.    Defendants' conduct violates the District of Columbia Human Rights Act.

### Relief

154.    Plaintiff seeks all relief available under the DCHRA, including compensatory

damages, punitive damages, injunctive relief, costs, and attorney's fees.

### COUNT IV

### Unlawful Discriminatory Practices

### D.C. Code § 2–1402.11

### (Against The COGAR Group, Ltd. And Individual Defendants)

155.    Plaintiff incorporates by reference all preceding paragraphs as though fully

set forth herein.

156.    The District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2–

1402.11, makes it an unlawful discriminatory practice for an employer or its agents

to discriminate, retaliate, or otherwise take adverse action against an individual

because the individual has opposed discriminatory practices, asserted rights

protected by District law, or participated in protected activity.

157.    At all times relevant, Plaintiff was an employee of Defendant The COGAR

Group, Ltd. And was subject to the authority, supervision, and control of the

Individual Defendants acting as agents of the employer.

158.    Plaintiff engaged in protected activity under the DCHRA by opposing unequal

treatment, reporting misconduct, and asserting his rights to fair and lawful

employment conditions.

159.    After Plaintiff engaged in protected activity, Defendants subjected him to

adverse actions, including but not limited to intimidation, heightened scrutiny,

exclusion from normal workplace treatment, and removal from work assignments.

160.    Defendants' actions were materially adverse and would dissuade a

reasonable employee from opposing discrimination or asserting protected rights.

161.    Defendants' conduct constitutes unlawful discrimination and retaliation in

violation of D.C. Code § 2–1402.11.

162.    Defendants acted intentionally, willfully, and with reckless disregard for

Plaintiff's statutory rights.

163.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered economic loss, emotional distress, humiliation, and deprivation of the full and equal enjoyment of employment opportunities guaranteed by District law.

164.    The DCHRA expressly prohibits employers from discharging an employee, limiting employment opportunities, or otherwise discriminating against an individual with respect to the terms, conditions, or privileges of employment, where such actions are taken wholly or partially for a discriminatory or retaliatory reason. D.C. Code § 2–1402.11(a)(1)(A).

165.    Defendants' actions—including removing Plaintiff from work assignments, subjecting him to disparate treatment, and retaliating after he engaged in protected activity—fall squarely within the conduct prohibited by § 2–1402.11(a)(1)(A)

## Relief Sought

166.    Plaintiff seeks all relief available under the District of Columbia Human Rights Act, including compensatory damages, punitive damages, injunctive relief, costs, and attorney's fees pursuant to D.C. Code § 2–1403.16.

## COUNT V

### Coercion or Retaliation

### D.C. Human Rights Act

### D.C. Code § 2–1402.61

**(Against All Defendants)**

167.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

168.    The District of Columbia Human Rights Act makes it unlawful to coerce, intimidate, threaten, retaliate against, or interfere with any individual in the exercise or enjoyment of rights protected under the Act. D.C. Code § 2–1402.61.

169.    On or about December 19, 2025, Defendants abruptly advanced a new and contradictory narrative, asserting alleged noncompliance and demanding that Plaintiff "select" from alternative schedules. This shift occurred after a December 9, 2024 email from supervisory personnel stating only that Plaintiff was "under review," without identifying any violation, infraction, or noncompliance.

170.    Defendants' December 19 assertions marked the first time any alleged violation was raised. This marked change in justification occurred only after Plaintiff had engaged in protected activity and had formally objected, in writing, to Defendants' assertions.

171.    The timing alone establishes pretext. No write-ups, verbal counseling, corrective action, or policy citations were issued before or contemporaneously with Plaintiff's suspension. The absence of any progressive discipline, combined with the delayed emergence of alleged violations, confirms that Defendants' explanations were manufactured after the fact to conceal retaliatory motives.

172.    Defendants' coercive intent is further evidenced by their sudden alteration of internal scheduling procedures following Plaintiff's protected activity. Plaintiff was

informed that, "after your situation," management changed the process to require
all open schedules to be presented for selection—an approach that had never
previously been applied to Plaintiff or to similarly situated employees.

173.     This admission is particularly significant because Defendants had long
suspended the post-bid scheduling process and had not reinstated it at the time of
Plaintiff's removal.

174.     For an extended period preceding Plaintiff's protected activity, numerous
guards operated without fixed schedules and routinely filled shifts on a flexible
basis, a condition known to both management and the union.

175.     Defendants nonetheless singled out Plaintiff for newly imposed scheduling
demands only after his protected activity.

176.      The statement that procedures were changed "after your situation"
confirms that Defendants were not enforcing any existing rule, but instead
scrambling to invent new requirements after the fact to justify retaliatory action
already taken.

177.     This selective procedural change, implemented only after Defendants had
already taken adverse action, constitutes direct evidence of scrambling and
damage control rather than enforcement of any preexisting rule.

178.     Finally, the coercive nature of Defendants' conduct is underscored by the
immediate involvement of senior management. After Plaintiff responded calmly and
unequivocally in writing—disputing Defendants' assertions and refusing to resign—
Defendants demanded that Plaintiff "answer the question" so management could

"determine which direction to take," despite the fact that Plaintiff had already answered in full.

179.     The only reasonable inference is that Defendants sought to pressure Plaintiff to alter his response, signaling a favorable outcome if Plaintiff recanted and an adverse outcome if he stood by his protected position.

180.     Such conduct constitutes unlawful coercion and retaliation under District law.

181.     Following Plaintiff's protected activity, Defendants, through supervisory personnel, expressly coerced and threatened Plaintiff by issuing a written ultimatum demanding that Plaintiff "submit [his] resignation by COB today" or be removed from the contract unless he agreed to newly imposed scheduling demands and alleged grooming compliance.

182.     This ultimatum constituted unlawful coercion, threat, retaliation, and interference with Plaintiff's exercise and enjoyment of rights protected under the District of Columbia Human Rights Act, in violation of D.C. Code § 2–1402.61.

183.     Plaintiff engaged in protected activity, including but not limited to:

184.     Opposing discriminatory and retaliatory treatment;

185.     Raising concerns regarding unlawful and unequal enforcement of workplace rules;

186.     Asserting his right to fair and non-discriminatory employment conditions.

187.     Defendants were aware of Plaintiff's protected activity.

188.    Shortly after Plaintiff engaged in protected activity, Defendants subjected

Plaintiff to adverse and coercive actions, including but not limited to:

189.    Intimidation and threats concerning Plaintiff's continued employment;

190.    Heightened scrutiny and selective enforcement of workplace rules;

191.    Removal from his assigned post and suspension from the schedule;

192.    Actions designed to chill Plaintiff's willingness to complain or seek

enforcement of his rights.

193.    Defendants' conduct was reasonably likely to deter a person of ordinary

firmness from engaging in protected activity.

194.    Defendants' actions were not taken for any legitimate, non-retaliatory

reason, but instead were motivated by retaliatory animus in response to Plaintiff's

protected conduct.

195.    The D.C. Human Rights Act expressly prohibits retaliation and coercion

regardless of employment classification.

196.    As a direct and proximate result of Defendants' unlawful retaliation and

coercion, Plaintiff suffered:

197.    Loss of employment opportunities;

198.    Economic harm;

199.    Emotional distress and humiliation;

200.    Interference with his statutory right to equal employment opportunity.

201.    Defendants' conduct was willful, intentional, and in reckless disregard of

Plaintiff's rights under District law.

202.    After Plaintiff engaged in protected activity by objecting in writing to

Defendants' false and retaliatory assertions regarding his employment status and

schedule, Defendants, acting through senior supervisory personnel, attempted to

pressure Plaintiff to retract, modify, or abandon his protected objections.

203.    Despite Plaintiff having already provided a written response disputing

Defendants' assertions and refusing to resign, Defendants demanded that Plaintiff

"answer the question" again, not because Plaintiff failed to respond, but because

Plaintiff's response did not conform to Defendants' desired narrative.

204.    Defendants' insistence that Plaintiff provide a different or additional

response, coupled with statements indicating that management would determine

"which direction to take" based on Plaintiff's compliance, constituted coercion and

interference within the meaning of D.C. Code § 2–1402.61(a)–(c). This conduct was

reasonably understood as an attempt to compel Plaintiff to relinquish or undermine

his protected objections under threat of adverse consequences.

205.    Following Plaintiff's protected activity, Defendants sought to pressure

Plaintiff to alter his stated position by conditioning the outcome of management's

response on whether Plaintiff would "change" or "stand by" his prior answer.

Plaintiff was expressly instructed that management needed a response "so [it

could] determine which direction to take," thereby communicating that a favorable

outcome would follow only if Plaintiff changed his answer, while adverse

consequences would follow if Plaintiff stood by it. Such conduct constitutes

coercion and interference with Plaintiff's protected rights, as it sought to compel

Plaintiff to abandon protected opposition in exchange for continued employment or favorable treatment.

206.    By requesting, suggesting, and attempting—directly and indirectly—to force Plaintiff to alter his protected position after he opposed unlawful practices, Defendants engaged in unlawful coercion and retaliation prohibited by the District of Columbia Human Rights Act. Defendants' conduct was intended to intimidate Plaintiff, chill his exercise of protected rights, and prevent compliance with the Act, and therefore independently violates D.C. Code § 2–1402.61.

## Relief Sought

207.    Plaintiff seeks all relief available under the D.C. Human Rights Act, including compensatory damages, punitive damages where permitted, injunctive relief, ·declaratory relief, and such other relief as the Court deems just and proper.

## COUNT VI

## Unlawful Retaliation by Employer

## D.C. Code § 32–1542

## (Against All Defendants)

208.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

209.     D.C. Code § 32–1542 makes it unlawful for any employer or its duly authorized agent to discharge or otherwise discriminate against an employee with respect to employment because the employee:

210.     Claimed or attempted to claim compensation or statutory benefits; or

211.     Testified or was about to testify in a proceeding protected under District law.

212.     Plaintiff engaged in protected activity by asserting his statutory rights and seeking to be treated fairly and free from retaliation in connection with employment-related protections and benefits guaranteed by law.

213.     Defendants were aware of Plaintiff's protected activity.

214.     After learning of Plaintiff's protected activity, Defendants discharged, suspended, or otherwise discriminated against Plaintiff with respect to the terms and conditions of his employment, including but not limited to:

215.     Removal from his assigned post;

216.     Suspension from the work schedule;

217.     Adverse actions affecting wages, hours, and continued employment.

218.     The temporal proximity between Plaintiff's protected activity and Defendants' adverse actions gives rise to a strong inference of retaliatory motive.

219.     Defendants' actions were taken because of Plaintiff's protected conduct and not for any legitimate, non-retaliatory reason.

220.     Section 32–1542 applies to Defendants' conduct regardless of any employment classification, and therefore does not excuse or justify retaliatory actions.

221.    Defendants' conduct constitutes unlawful retaliation and discrimination in violation of D.C. Code § 32–1542.

222.    As a direct and proximate result of Defendants' violations, Plaintiff suffered:

223.    Loss of wages and employment opportunities;

224.    Economic harm;

225.    Emotional distress and humiliation.

226.    Pursuant to D.C. Code § 32–1542, Defendants are liable for statutory penalties and for restoration of Plaintiff's employment status and compensation for lost wages.

### Relief Sought

227.    Plaintiff seeks all relief available under D.C. Code § 32–1542, including:

228.    Restoration of employment or front pay in lieu thereof;

229.    Back pay and compensation for lost wages;

230.    Statutory penalties as provided by law;

231.    Costs and such other relief as the Court deems just and proper.

### COUNT VII

### Unlawful Discrimination Based on Personal Appearance and other unlawful acts

### D.C. Human Rights Act — D.C. Code § 2–1402.21(a)

### (Against All Defendants)

232.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

233.    The District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2–1402.21(a), makes it an unlawful discriminatory practice to take adverse or disparate actions against an individual, wholly or partially, based on personal appearance, among other protected characteristics.

234.    Plaintiff is a member of a protected class under the DCHRA

235.    Plaintiff at all times performed his duties in compliance with applicable workplace requirements and was authorized to work under the terms of his engagement.

236.    Prior to the adverse action taken against him, Plaintiff was actively working an approved schedule and had received no write-ups, counseling, corrective action, or notice of any alleged violation.

237.    No Defendant identified any performance, compliance, or policy issue contemporaneously with Plaintiff's suspension from the schedule.

238.    Any later attempt to characterize Plaintiff as noncompliant arose only after the adverse action had already occurred and after Plaintiff engaged in protected activity, confirming that such explanations were pretextual rather than legitimate.

239.    At all relevant times, Plaintiff performed his duties in accordance with applicable workplace requirements and was authorized to work under the terms of his engagement.

240.    Plaintiff was actively working an approved schedule and had not been

issued any disciplinary notice, counseling, corrective action, or written warning

prior to the adverse action taken against him.

241.    Defendants' failure to identify any contemporaneous violation or deficiency

further confirms that the later characterization of Plaintiff as "noncompliant" was

pretextual and not based on legitimate operational or policy concerns.

242.    During the course of Plaintiff's employment, Defendants' agents and

supervisors subjected Plaintiff to intrusive and coercive scrutiny unrelated to job

performance or operational necessity, including directing Plaintiff to alter his

protective equipment so that his physical appearance could be inspected without

any documented policy basis or prior notice.

243.    Defendants made vague and subjective comments regarding Plaintiff's

appearance without citing any specific rule, standard, measurement, or

contemporaneous violation, and without issuing any written notice, counseling, or

corrective action. No objective criteria were applied, and no similarly situated

employees were subjected to comparable scrutiny.

244.    This conduct subjected Plaintiff to unnecessary humiliation and differential

treatment and was used as a pretextual mechanism to justify adverse action and

pressure Plaintiff following his protected activity, rather than to enforce any

legitimate workplace policy.

245.    These actions were unnecessary, intrusive, and degrading, served no

legitimate safety or operational purpose, and were not applied uniformly to other

employees.

246.    Defendants' conduct constituted differential treatment and harassment

based on Plaintiff's personal appearance, in violation of D.C. Code § 2–1402.21(a).

247.    Defendants' actions interfered with the terms, conditions, and privileges of

Plaintiff's employment, created a hostile and humiliating work environment, and

contributed to subsequent adverse employment actions.

248.    As a direct and proximate result of Defendants' discriminatory conduct,

Plaintiff suffered:

249.    Humiliation and emotional distress;

250.    Invasion of personal dignity;

251.    Exacerbation of a medical skin condition;

252.    Adverse impacts on his employment.

253.    Defendants' conduct was intentional, willful, and taken with reckless

disregard for Plaintiff's rights under the DCHRA.

**Relief Sought**

254.    Plaintiff seeks all relief available under the D.C. Human Rights Act, including:

255.    Compensatory damages;

256.    Damages for emotional distress;

257.    Declaratory and injunctive relief;

258.    Costs and such other relief as the Court deems just and proper.

## COUNT VIII

### Aiding and Abetting Discrimination, Retaliation, and Coercion

### D.C. Human Rights Act – D.C. Code § 2–1402.62

### *(Against All Defendants)*

259.    Plaintiff incorporates by reference all preceding paragraphs as though fully

set forth herein.

260.    The District of Columbia Human Rights Act makes it an unlawful

discriminatory practice for any person to aid, abet, invite, compel, coerce, or

attempt to aid, abet, invite, compel, or coerce the commission of any act prohibited

under the Act. D.C. Code § 2–1402.62.

261.    Following Plaintiff's suspension from the work schedule, Greg Wholean, an

Operations Manager for Defendant, received Plaintiff's complaint and was aware

that the supervisory personnel to whom the matter was redirected were the same

individuals implicated in Plaintiff's protected complaint.

262.    Rather than initiating or escalating the matter to an independent or neutral

review, Greg redirected the complaint back to the same supervisory chain

responsible for the retaliatory conduct, thereby facilitating, enabling, and

prolonging the retaliation against Plaintiff.

263.    After Plaintiff was suspended from the work schedule, Defendants stated

that a "review" would be conducted by the same supervisory chain involved in the

events Plaintiff complained of.

264.     Defendants did not assign the matter to a neutral decision-maker, did not separate the investigation from the implicated personnel, and did not take control of the review through Human Resources.

265.     By allowing supervisory personnel implicated in Plaintiff's protected complaint to control the post-complaint review process, and by failing to intervene, Human Resources and management facilitated, ratified, and aided the retaliatory conduct. Such inaction enabled the continuation of adverse treatment and constitutes aiding and abetting retaliation under the D.C. Human Rights Act.

266.     Plaintiff engaged in protected activity under the D.C. Human Rights Act, including but not limited to opposing discriminatory and retaliatory treatment, raising concerns regarding unequal and selective enforcement of workplace rules, and asserting his right to equal and non-discriminatory employment conditions.

267.     Defendants, through their supervisory and managerial personnel, had actual knowledge of Plaintiff's protected activity.

268.     After Plaintiff engaged in protected activity, Defendants, acting through multiple supervisory personnel and in concert with one another, aided, abetted, invited, compelled, and coerced discriminatory and retaliatory conduct prohibited by the D.C. Human Rights Act.

269.     Such aiding and abetting conduct included, but was not limited to:

(a) Selectively enforcing appearance requirements against Plaintiff while permitting similarly situated employees to remain unchallenged;

(b) Subjecting Plaintiff to heightened scrutiny, humiliating treatment, and arbitrary demands unrelated to legitimate job performance;

(c) misrepresenting employment requirements and workplace policies in order to pressure Plaintiff into compliance;

(d) Imposing sudden and unreasonable scheduling ultimatums not imposed on other employees; and

(e) facilitating, endorsing, and enforcing coercive threats designed to force Plaintiff to abandon protected rights or resign his employment.

270.     Defendants further aided and abetted unlawful conduct by coordinating meetings, reinforcing false or newly invented requirements, escalating pressure through multiple supervisory channels, and ratifying retaliatory actions taken against Plaintiff following his protected activity.

271.     Defendants' aiding and abetting conduct materially altered the terms and conditions of Plaintiff's employment and was intended to intimidate, punish, and deter Plaintiff from exercising rights protected under the D.C. Human Rights Act.

272.     Defendants acted intentionally, willfully, and with reckless disregard for Plaintiff's statutory rights, or at minimum knowingly participated in or facilitated conduct they knew or should have known was unlawful.

273.     As a direct and proximate result of Defendants' aiding and abetting of discriminatory, retaliatory, and coercive conduct, Plaintiff suffered substantial damages, including but not limited to lost wages, loss of future earnings, emotional distress, humiliation, reputational harm, and other compensatory damages.

274.     COGAR's Anti-Harassment and Anti-Retaliation Policy imposes a mandatory

duty on supervisory personnel to escalate, investigate, and address complaints of

discrimination or retaliation.

275.     After Plaintiff engaged in protected activity by submitting a written

complaint, no investigation was initiated, no acknowledgment was issued, and no

corrective process occurred.

276.     This failure was not passive. By withholding Plaintiff's complaint from

required review, permitting retaliatory actions to proceed, and participating in or

enabling adverse treatment the same day the complaint was made, Defendants

aided, abetted, and facilitated retaliation in violation of the District of Columbia

Human Rights Act.

277.     Such conduct constitutes affirmative misconduct and intentional

interference with Plaintiff's protected rights, not mere inaction.

278.     Plaintiff is entitled to all relief available under the D.C. Human Rights Act,

including compensatory damages, punitive damages where available, declaratory

and injunctive relief, costs, and such other relief as the Court deems just and

proper.

## COUNT IX

## DECLARATORY & INJUNCTIVE RELIEF

## (Against All Defendants)

279.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

280.    An actual, present, and justiciable controversy exists between Plaintiff and Defendants concerning Plaintiff's rights under District of Columbia and federal law.

281.    Defendants' acts and omissions — including retaliation, discrimination, coercion, misuse of authority, selective enforcement, and normalization of unlawful conduct — violated Plaintiff's rights under, inter alia:

282.    42 U.S.C. § 1981;

283.    D.C. Code §§ 2-1402.01, 2-1402.11, 2-1402.61;

284.    D.C. Code §§ 32-1311 and 32-1542;

285.    And applicable constitutional protections.

286.    Plaintiff seeks a declaration that Defendants' conduct was unlawful, retaliatory, discriminatory, and in violation of Plaintiff's statutory and constitutional rights.

287.    Plaintiff further seeks injunctive relief to prevent ongoing and future harm, as Defendants' actions demonstrate a substantial likelihood of continued retaliation, coercion, or discriminatory treatment absent court intervention.

288.    Specifically, Plaintiff seeks injunctive relief requiring Defendants to:

    i.  Cease and desist from retaliating, coercing, or discriminating against Plaintiff for engaging in protected activity;

    ii. Refrain from enforcing workplace rules or employment practices in a selective, pretextual, or discriminatory manner;

    iii.  Restore Plaintiff to his position or an equivalent position, with no loss of seniority, pay, or benefits, should the Court determine reinstatement is appropriate;

    iv.  Remove, correct, and refrain from relying upon any retaliatory, stigmatizing, or pretextual records or determinations concerning Plaintiff;

    v.  Comply with all applicable anti-retaliation, anti-discrimination, and personal-appearance protections under District and federal law.

289.    Plaintiff further seeks an order requiring Defendants to post a Court-approved notice in conspicuous locations where employment-related notices are customarily displayed, including but not limited to employee break rooms and equipment or armory areas, stating that Defendants will not retaliate, coerce, or discriminate against Plaintiff or any employee for engaging in protected activity or exercising rights protected by law.

290.    Declaratory and injunctive relief is necessary to:

291.    Clarify the legal rights and obligations of the parties;

292.    Prevent irreparable harm to Plaintiff;

293.    Deter future unlawful conduct; and

294.    Ensure compliance with District and federal civil rights laws.

295.    Plaintiff has no adequate remedy at law for the ongoing and prospective violations of his rights absent declaratory and injunctive relief.

## PRAYER FOR RELIEF / DAMAGES

296.    WHEREFORE, Plaintiff Archibald T. Djabatey respectfully requests that this

Court enter judgment in his favor and against Defendant The COGAR Group, LTD,

and award the following relief:

### A. Compensatory Damages

297.    An award of compensatory damages in an amount to be determined at trial,

including but not limited to damages for:

- lost wages and employment benefits;

- economic instability caused by Defendant's retaliatory conduct;

- emotional distress, humiliation, anxiety, and mental anguish;

- damage to Plaintiff's professional reputation and standing;

- loss of dignity, personal security, and workplace fairness;

298.    in an amount sufficient to fully compensate Plaintiff for the harm suffered.

### B. Punitive Damages

299.    An award of punitive and exemplary damages in an amount sufficient to

punish Defendant and deter similar misconduct in the future, based on Defendant's

willful, malicious, reckless, and retaliatory conduct, including its deliberate

disregard for Plaintiff's protected rights under federal and District of Columbia law.

300.    As a direct and proximate result of Defendants' unlawful conduct, including

violations of 42 U.S.C. § 1981 and applicable District of Columbia anti-retaliation

statutes, including D.C. Code §§ 32-1311 and 2-1402.11, Plaintiff has suffered

substantial damages, including but not limited to lost wages, loss of future

earnings, emotional distress, humiliation, reputational harm, and other

compensatory damages.

301.    Plaintiff further seeks punitive damages pursuant to 42 U.S.C. § 1981 to

punish and deter Defendants' intentional, malicious, and reckless disregard of

Plaintiff's federally protected rights.

302.    Plaintiff seeks judgment in an amount to be determined by a jury, but not

less than $2,500,000, together with pre-judgment and post-judgment interest,

costs, and all other relief the Court deems just and proper.

C. **Statutory and Civil Penalties**

303.    All statutory damages, civil penalties, and remedies available under

applicable District of Columbia statutes, including but not limited to the D.C.

Human Rights Act and Title 32 of the D.C. Code.

D. **Injunctive and Equitable Relief**

304.    Appropriate injunctive and equitable relief, including but not limited to:

1. An order enjoining Defendant from engaging in retaliation, coercion, or discriminatory practices against Plaintiff or other employees who engage in protected activity;

2. An order requiring Defendant to implement corrective policies and training regarding retaliation, coercion, and discrimination based on race and personal appearance;

3. An order requiring Defendant to post a notice in all employee break rooms, armories, and common officer areas, for a period to be determined by the Court, stating that:

4. employees have the right to raise concerns and engage in protected activity without retaliation;

5. Defendant is prohibited from retaliating against employees for asserting their rights;

6. Defendant is prohibited from coercive practices and discrimination based on personal appearance;

7. retaliation and coercion violate District of Columbia law;

8. Such other non-monetary relief as the Court deems necessary to remedy the unlawful conduct and prevent recurrence.

9. Posted Notice and Compliance Relief

   Plaintiff seeks injunctive relief requiring Defendant to post a notice, approved by the Court, in conspicuous locations including but not limited to employee break rooms, armories, equipment rooms, and other areas where employment-related notices are customarily displayed.

10. The notice shall state that Defendant will not retaliate, coerce, discriminate against, or otherwise interfere with the rights of Archibald T. Djabatey, and that Defendant will not retaliate, coerce, or discriminate against any employee for engaging in protected activity, reporting concerns, or exercising rights protected by District or federal law.

11. The notice shall further affirm Defendant's obligation to comply with all anti-retaliation, anti-discrimination, and personal-appearance protections under applicable law.

305.    Reinstatement and Front Pay (Alternative Relief)

Plaintiff seeks equitable relief in the form of reinstatement to his prior position with Defendant, or a substantially equivalent position, with restoration of seniority, benefits, work assignments, and all rights and privileges of employment, free from retaliation, coercion, or discrimination.

306.    In the alternative, should reinstatement be deemed impracticable or inequitable due to Defendant's conduct, Plaintiff seeks an award of front pay in lieu of reinstatement.

**Non-Retaliation and Name-Clearing Relief**

307.    Plaintiff further seeks an injunction prohibiting Defendant from retaliating against him in any form, including through adverse scheduling, discipline, surveillance, intimidation, or the dissemination of false or stigmatizing information.

308.    Plaintiff additionally seeks name-clearing relief, including an order requiring

Defendant to remove any retaliatory, misleading, or adverse notations from

Plaintiff's personnel records and to refrain from communicating any such

information to third parties.

E. **Attorney's Fees and Costs**

An award of reasonable attorney's fees, litigation expenses, and costs, as permitted by

law.

F. Total Monetary Relief

All monetary relief awarded in this action, including compensatory and punitive damages,

in an amount not less than $2,500,000, or such greater amount as proven at trial.

G. Other Relief

Such other and further relief as this Court deems just, proper, and equitable.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED,


/s/ Archibald Djabatey

Archibald Djabatey

Plaintiff, Pro Se

4504 Hunt Pl NE, #2

Washington, DC 20019

Telephone: (240) 877-5739

Email: tooeaze@gmail.com


Date: December 21, 2025

# Superior Court of the District of Columbia

### CIVIL DIVISION - CIVIL ACTIONS BRANCH
### INFORMATION SHEET

Archibald Djabatey
_Plaintiff(s)_

Case Number: **2 0 2 5 -CAB- 8 4 3 7**

vs

Date: _____

The Cogar Group, LTD
_Defendant(s)_

☐ One of the defendants is being sued in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* Archibald Djabatey | **Relationship to Lawsuit** |
| Firm Name: Pro Se | ☐ Attorney for Plaintiff |
| Telephone No.: 240 877-5739    DC Bar No.: | ☑ Self (Pro Se) |
| | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury    ☐ 6 Person Jury    ☑ 12 Person Jury

Demand: $ 2,500,000    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____ Judge: _____ Calendar #: _____

Case No.: _____ Judge: _____ Calendar #: _____

**NATURE OF SUIT:** *(Check One Box Only)*

**CONTRACT**
☐ Breach of Contract
☐ Breach of Warranty
☐ Condo/Homeowner Assn. Fees
☐ Contract Enforcement
☐ Negotiable Instrument

**COLLECTION/INS. SUB**
☐ Debt Collection
☐ Insurance Subrogation
☐ Motion/Application for Judgment by Confession
☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
☐ Breach of Contract
☑ Discrimination
☐ Wage Claim
☐ Whistle Blower
☐ Wrongful Termination

**REAL PROPERTY**
☐ Condo/Homeowner Assn. Foreclosure    ☐ Ejectment    ☐ Other
☐ Declaratory Judgment    ☐ Eminent Domain    ☐ Quiet Title
☐ Drug Related Nuisance Abatement    ☐ Interpleader    ☐ Specific Performance

☐ **FRIENDLY SUIT**
☐ **HOUSING CODE REGULATIONS**
☐ **QUI TAM**
☐ **STRUCTURED SETTLEMENTS**

**ADMINISTRATIVE PROCEEDINGS**
☐ Administrative Search Warrant
☐ App. for Entry of Jgt. Defaulted Compensation Benefits
☐ Enter Administrative Order as Judgment
☐ Libel of Information
☐ Master Meter
☐ Petition Other

☐ Release Mechanics Lien
☐ Request for Subpoena

**MALPRACTICE**
☐ Medical – Other
☐ Wrongful Death

**AGENCY APPEAL**
☐ Dangerous Animal Determination
☐ DCPS Residency Appeal
☐ Merit Personnel Act (OEA)
☐ Merit Personnel Act (OHR)
☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

CV-496/February 2023

# Information Sheet, Continued

<table>
<tr><td>

**CIVIL ASSET FORFEITURE**
- [ ] Currency
- [ ] Other
- [ ] Real Property
- [ ] Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**
- [ ] Birth Certificate Amendment
- [ ] Death Certificate Amendment
- [ ] Gender Amendment
- [ ] Name Change

</td><td>

**TORT**
- [ ] Abuse of Process
- [ ] Assault/Battery
- [ ] Conversion
- [ ] False Arrest/Malicious Prosecution
- [ ] Libel/Slander/Defamation
- [ ] Personal Injury
- [ ] Toxic Mass
- [ ] Wrongful Death (Non-Medical Malpractice)

</td></tr>
</table>

**GENERAL CIVIL**
- [ ] Accounting
- [ ] Deceit (Misrepresentation)
- [ ] Fraud
- [ ] Invasion of Privacy
- [ ] Lead Paint
- [ ] Legal Malpractice
- [ ] Motion/Application Regarding Arbitration Award
- [ ] Other - General Civil

- [ ] Product Liability
- [ ] Request for Liquidation
- [ ] Writ of Replevin
- [ ] Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- [ ] Asbestos

**MORTGAGE FORECLOSURE**
- [ ] Non-Residential
- [ ] Residential

**STATUTORY CLAIM**
- [ ] Anti – SLAPP
- [ ] Consumer Protection Act
- [ ] Exploitation of Vulnerable Adult
- [ ] Freedom of Information Act (FOIA)
- [ ] Other

**TAX SALE FORECLOSURE**
- [ ] Tax Sale Annual
- [ ] Tax Sale Bid Off

**VEHICLE**
- [ ] Personal Injury
- [ ] Property Damage

- [ ] **TRAFFIC ADJUDICATION APPEAL**
- [ ] **REQUEST FOR FOREIGN JUDGMENT**

_____
Filer/Attorney's Signature

12/21/25
_____
Date

CV-496/February 2023